Good morning, Your Honors. Jason Carr appearing on behalf of Appellate Nicholas J. McWeeney. This is a case about consent. There are no, well, more specifically about the scope of consent. There are no complications in this matter about whether or not there's reasonable suspicion or probable cause for a search. There's no indication in this record of anything, of any of those factors coming into play. What we have here is a determination over whether or not McWeeney's assent to the inquiry of do you mind if I take a look for anything that you're not supposed to have, constituted, whether the scope of that consent constituted a search into the trunk, moving items around in the trunk, and pulling up the carpeting of the trunk to find the gun underneath the carpeting. You drove into an airport today where they screen cars, DATF or DSA screens cars, and you come to the barricade and they say, may I look in your, I need to look in your trunk, what would you understand them to be doing? Well, in that specific factional context, you would reasonably believe that the search may be more extensive than it would in other contexts. And that's an important lesson to learn from the case law, is that the specific factional context of the officer's request matters. And even in authority that would seem to be unfavorable to me, like the Fifth Circuit case of Rich, the court took pains to point out that the request that was made to the individual has to be combined with the factual context in which it was made. And generally the factual context that comes into play is what is the object of the search? In fact, Florida v. Jimeno, which is the governing, our guiding case here, which delineates the parameters of the inquiry, specifically says that an important part of the inquiry is what is the defined object? And I would submit in this case that's part of where the magistrate court's report and recommendation went astray, is because on page 290 and 291 of the R&R, the magistrate court recognizes that the defined object of the search is important, goes on to note that the officer asked to look for anything you're not supposed to have, which is the exact language we're looking at here, and says, well, the scope has been defined, albeit broadly. Well, do you have any case where the officer said, may I look inside the car, and the person in charge of the car says, yes, go ahead? Do you have any case that says that they can't look in the trunk? Well, Your Honor, Wald would be the best case I would have for that. It's actually distinguishable there because the officer said, may I take a quick look? And in that case, the court said that the district court didn't abuse his discretion by saying that that didn't encompass the search of the trunk. Now, but you can't just look at what the officer said, may I look. There are three key factors that can be distilled from the case law that you have to look at. The first is, you know, did the officer delineate the object or contours of the search? Did he specifically say, I'm looking for drugs, guns? What's the authority that he has to say that? Well, it's in Florida v. Jimeno, where it says the scope of the search is governed by the expressed object of the search. It's also a factor that is delineated in virtually all the case law in this arena, where the courts talk about the expressed object of the search. If the officer says, I am looking for drugs, and you agree to that search, then you should know objectively, the objectively reasonable person should know that he's going to look in containers that can hold small objects. Here, there's none of that definition of the expressed object. It was an ambiguous kind of a request. He said, do you have anything in the car that you're not supposed to have? Which could be a body. It could be the car itself. So the factual content there is that he didn't delineate the scope of the search. It was left broad-based. The second factor we have to look at is, did the individual have the ability to observe the search while it occurred? And this is a very important factor in all the case law, including the Ninth Circuit case of Cannon, where it was a dispositive factor. Does the individual have the right, while the search is occurring, to object to officers' actions that exceed his internal idea of what the scope should be? So in other words, if the officer starts going into your trunk and you're watching it, you have the onus to say, wait, I didn't agree for you to go into my trunk. And even more specifically, hey, I didn't agree for you to go pull the carpet out of my trunk. In this case, the factual record is clear that my client and his passenger were not allowed to have watched the search. He was not allowed to object to the scope of it. Now, this is an interesting area of the law because it seems as though some of the out-of-circuit authority has become very divorced from a common-sense inquiry. And I would submit that common-sense inquiry is very important in this case because it's incorporated in the analysis. The Supreme Court said we are supposed to determine what the objectively reasonable person would believe in this context. And the first area where I believe the case law, out-of-circuit case law, has gone astray is what the case law says is, well, you have this onus, and the government makes this argument, you have this onus to limit the scope of the search at its inception, which, if you think about it, is almost humorous. What they're saying is that what Mr. McQueeny should have said, oh, yes, officer, you can search my car, but don't look in the trunk. And more specifically, don't look in the trunk under the rug. And so the case law seems to be saying that you have this onus to tell the officer that he can look anywhere but where there's contraband. We'll be asking the government about what the reason is for not letting the suspects watch the search. But what do you do with the fact that the officers had took quite a bit of time before the search began. He called for backup. He got a message that the car had been listed as a stolen and returned car. He got other information about the car, which caused him to call for backup. Well, they had a police convention there at the car at the time this search was going on. And the officers didn't say what they were looking for, but does that make the search unreasonable? It's a good question, Judge. I would submit that what happened here is within the first few minutes of the encounter, when Officer Walsh went to the car and McQueen is the passenger, Lopez is the driver, he says within the first few minutes of talking to these individuals, well, if you guys have anything you're not supposed to have, mind if I take a look. He says that they both say in unison, okay. He goes back to his car, calls for backup. And essentially McQueen and Lopez are sitting in the car, their car, and Officer Walsh is sitting in his car for up to seven minutes or more for backup to come. Backup comes. They take McQueen and Lopez out of the car, make them turn away from the car and search it. They find the gun and then they essentially take them into custody and arrest them. And then for hours after that, things go on where they interrogate McQueen many times. But do you think at some point in that process that he could have, having said you can take a look, said this is getting out of control and I withdraw my consent? The factor I think is relevant is that once there is the initial assent, that after that the matter was out of McQueen's hands. It's not out of his hands. You can delimit it or object to a search campaign. You could, but then all these forces came into play. Many officers are arriving, there's this coercive atmosphere, and specifically what I think is important is Officer Walsh, when he came back after backup arrived, he came back to McQueen's car and he said, well, you guys say you don't have anything you're not supposed to have in this car. I'm going to look. What I'm trying to follow up on, because I agree with what we talked to the government about, is making them turn their backs. But they turn their backs in a context where the jurisprudence is you can, having once given consent, revoke it, limit it, and if whatever his expectation might have been on the unspecified nature of the object of the search at the outset, could there have been any doubt in his mind given the behavior, having given consent, the behavior of the police, that this was not going to be a casual look in the doors, look in the windows, pop the trunk lid? Don't you think he could have, from all of the objective circumstances, said, time out, no more, I'm out of here? It's possible, Your Honor, and I would submit that if this was a case where my client was allowed to watch the search, I'd be on much weaker grounds. But the primary rebuttal I would make to what you just said, Judge, is when Officer Walsh came back and got everybody out of the vehicle, he essentially told them, I'm going to search. At that point, the reasonable person would not believe that they had any further input into the matter would be what I would submit. I see I only have 45 seconds left. May it please the Court, Brian Quarles for the United States, that this record properly found that the scope of appellant's consent extended not only to a search of the vehicle's trunk, but also to the act of pulling back already loose carpet bedding from the trunk area. If so, why did they not let him watch what they were doing? Your Honor, there are several reasons that support why the officers did not allow the appellant to view the search. I'd like to hear them. First, Your Honor, I'd like to arm you with some case law. Specifically, in United States v. McSween, found at 53F3-684 out of the Fifth Circuit, the Court there held that the police are not required to conduct searches in plain view of the suspect and in a manner slowly enough that the suspect may withdraw or delimit his consent at any time during the search. Well, they may say that, but did they deliberately in that case prevent, as opposed to conducting it outside the view? One of the, I don't know, McSweeny or companion, didn't they turn around and want to watch and they were told no? They did, Your Honor. That's an overt affirmative act to preclude observation. It's not sort of, gee, we didn't move them up to the car because they were distracted, but they made an overt effort to watch and were told that they couldn't. So what's the second reason you've got, besides the Fifth Circuit's case? Yes, Your Honor. The record evidence establishes that appellant had several opportunities to withdraw his consent. And at the time that the search was conducted, appellant was not handcuffed. And for public policy reasons, the officers, or safety reasons, did not prevent appellant to view the search. I'm sorry, because they neglected to handcuff him, because they didn't think he was dangerous enough to handcuff, they had to turn him around so he couldn't watch the search? Well, Your Honor. What's your next reason? Well, Your Honor, I think, I would submit that that's important, because it certainly may have increased appellant's inclination to flee. He, in fact, was a felon. They handcuffed him. Counsel, I mean, you're saying, well, you know, this is a dangerous situation. This guy could, you know, do all sorts of things. And we had to not let him watch what we were doing, because we didn't handcuff him. Any inconsistency there? Your Honor, I'm not saying that they had reason to believe he was a dangerous person or not. What I'm saying is that they had not recovered the gun from the trunk of the vehicle at that point, so he wasn't handcuffed. But certainly. So then I'm trying to understand why the remedy is to prevent somebody whose consent is critical to their ability to search, because they've got no probable cause. His consent, the case law says, involves the defendant for failure to object or withdraw consent, and then you put him in a position where he can't watch what's going on. The case law, however, does not require that the suspect be able to view the search. Well, the case law. Give me a case which says it's proper for the police to actively prevent observation. When it's been made clear that the individual wishes to observe. Well, I would, again, I would, I have found no case law that, of course, is on point. It seems like it's the right opinion that says it's okay. Well, Your Honor, what I'd like for this Court to do is affirm the district court's decision, because in this case. I say I'm sure you'd like that. Well, I think in this case that the case law supports that decision should be upheld, because the appellant had an opportunity to object to the search. There were several opportunities. Now, certainly he was not permitted to view the search, but I would submit strong public policy reasons support the officer's decision not to permit him to view the search. Which is that? I mean, I still haven't heard it. When you've got handcuffing, failure to handcuff is a reason for preventing him from watching the search. I would. What's your, what's the other public policy? Your Honor. Or other facts that support some public policy. I would submit it's not necessarily the failure to handcuff, but the inclination to flee. When the suspect is a convicted felon, he's aware that there's a gun located in the area that's being searched, certainly can encourage the suspect to flee. And because he was not handcuffed, the police may have been in danger for that very reason. So I think that it was important that, in this particular case, that he not be permitted to view the search. Is it your position they could not have handcuffed him, based on what they knew at the time before they found the gun? Are you saying that? Yes, Your Honor. I'm not certain at that point that they had enough evidence to handcuff him. Therefore, instead of violating his rights, they allowed him to remain free. However, that didn't mean that they had to sacrifice and compromise their security, because they were not sure if this person is a danger or not. But what about security? I don't quite understand it. He's got to keep his back to the car. Is that less secure than allowing him to have his front to the car? Your Honor, I'm not certain whether it's his back or his front to the car that's dispositive. I would submit that it's the fact that he's viewing an area where they may recover a weapon. He may leave. He may flee. I think that's a legitimate and a reasonable concern that the officers have. And one of the patrol cars? Put him in the back of a patrol car? Again, Your Honor, I think potentially that may have violated his rights. At this point, he had not been placed under arrest. He was merely being secured while the officers continued to investigate. I think based on the circumstances under this case, they acted appropriately. And first, not only for their own safety, but that of the appellant. Was Officer Walsh operating under a police department standard operating procedure? Is this whenever they make a traffic stop for no license plate in front, and then they get the information about who the driver and the occupant are, that they then do not let them watch the search? Is that standard operating procedure? Or is this just Officer Walsh's whimsical way of going about it? Your Honor, I'm not certain if this is office procedure or not. But I would submit that his actions are not whimsical in that, again, this person was not placed under arrest. He was merely safeguarding the investigation to allow the officers to search without violating his rights. They weren't under arrest, but they were told they couldn't turn around and look. That's correct, Your Honor. So he has a constitutional right to object, a constitutional right not to be handcuffed, a constitutional right not to be placed in the back seat of a car. But he doesn't have a constitutional right to enforce his ability to object by viewing the scope of the search. Well, Your Honor, he could have done this, though. Once the officer said, don't turn around, he could have said, well, I no longer consent. He could have delimited the consent that he had offered. He could have said, I no longer agree with you searching the vehicle. He didn't do any of that. He, in essence, consented not only to the search of the vehicle but to the officer's command that he not look and view the search. Is that a rational argument? You know he's probably scared to death. He's got all these officers around to then make that statement. That's not real life. Your Honor, I would submit that keeping in mind the record evidence establishes that the appellant is a convicted felon, this wasn't his first run in a deal with the law. So that although it may not seem rational to people that are law-abiding, I believe that it was rational for him to limit the consent that he had offered. He could have, again, told the officers that I no longer agree to the consent because I'm not allowed to view the search. He certainly had that right. He wasn't handcuffed. This was not a coercive environment. Well. It has not been argued by appellant that it's a coercive environment. Thank you for amending. If there's any other questions for the Court, I'd ask that, again, you affirm the district court's decision. Thank you. It was a very coercive environment, Mr. McQueen. He was subjected to at the time. Just to make that clear. And also, any. Well, he said you didn't argue that. Well, sure we argued it. We argued it implicitly throughout the briefings and the trial court proceedings. Maybe. But this is an objective person inquiry, so it doesn't matter. A lot looser over the week, you know. I'm glad you're getting, you know, relaxed. I like it. You might think about the principle don't shoot a dead duck twice. Sorry, ma'am? Don't shoot a dead duck twice. Yes, Your Honor. I would like one point I'd like to make before my time is up. You're not getting looser. We're getting looser. I'm sorry. We're taking it very seriously, but, you know, there is a certain element of surreality about some of what's going on here. I would like to know, seriously, did you explicitly argue that he was precluded from withdrawing consent by the coercive atmosphere or anything? Yes, Your Honor, because we argued below pretty extensively that the consent was not voluntary, and it wasn't voluntary because of the circumstances of how it was asked and what happened with the officers and how their ability, they were controlled by the officers and told what to do and told where to stand and that kind of stuff. Okay. This is an objective person inquiry, so it doesn't matter what McQueen's individual characteristics are, whether he has a criminal history. I will remind the Court that he is a very young man. And speaking of the surreal aspects of this case, I would ask the Court to take a careful look at the case law that says that a request to take a look is the same as a request to search. All right, but you're not arguing, are you? And then we'll wind this up on this. You're not arguing that they have to use the word search? In other words, is there a material difference or dispositive difference if the officer had said, after the question, may I take a look to confirm that you don't have anything you're not supposed to have? Or did you have to say, may I search your car? Well, this is the core inquiry here is an objective person inquiry. What would the reasonably objective person believe he had consented to? And part of the factor that has to go into that inquiry is what was the nature of the request? The language of the request has to be relevant. Car that he shouldn't have. Right. All right. Do you mind if I take a look? All right. And since he is a convicted felon, he could reasonably assume that it might be guns or it might be contraband or whatever. Not just the average Joe on the street. We can't take that into account, Your Honor. We have to see what the objectively reasonable person. The objectively reasonable person would gauge what was the nature of the request? What is the cop looking for? What is he said he's looking for? What are the factual circumstances of this? Am I going into the airport? Have I just been stopped on the street for not having a front license plate? Can't it be an objectively reasonable felon rather than just Joe Blow? Your Honor, I don't believe it can. And there is a footnote in one of the cases cited in the briefs that talks about that where they talk about how the district court precluded the government from introducing the individual's record. And they said we aren't going to reverse that because this is an objective person inquiry. And of the objective person, we don't incorporate a subjective criminal history into that inquiry. I see my time is far up. Thank you. Okay, thank you both. We appreciate the argument.
judges: Goodwin, B. Fletcher, Fisher